FILED
2021 FEB 25 AM 10:33
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SMART SURGICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UTAH CORD BANK, INC.; and NOVA VITA, LLC, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART UTAH CORD BANK'S MOTION TO DISMISS AND NOVA VITA'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Case No. 2:20-cv-00244-JNP <br><br> District Judge Jill N. Parrish |

## INTRODUCTION

Before the court are a Motion to Dismiss (ECF No. 25) filed by Defendant Utah Cord Bank, Inc. ("UCB") and a Motion for Judgment on the Pleadings (ECF No. 28) filed by Defendant Nova Vita, LLC ("Nova Vita"). For the reasons set forth herein, the court GRANTS IN PART and DENIES IN PART Defendants' motions.

## BACKGROUND

Smart Surgical manufactures and sells "biologic products." ECF No. 2 ¶ 8. UCB manufactures and sells products that "directly compete" with Smart Surgical's products. *Id.* ¶ 9. Smart Surgical employed Daniel Pepock ("Pepock") as its Vice President of Sales. Pepock entered into an employment agreement, which in relevant part provided that:

> (a) Pepock would be provided proprietary information belonging to Plaintiff; (b) Pepock would not disclose and would keep confidential all of Plaintiff's proprietary and confidential information; (c) for a period of 18 months after the termination of Pepock's employment

> with Plaintiff, Pepock would not solicit or encourage, or cause others to solicit or encourage, any employees or consultants of Plaintiff to terminate their relationship with Plaintiff; and (d) for a period of 18 months after the termination of Pepock's employment with Plaintiff, Pepock would not solicit or encourage, or cause others to solicit or encourage, any of Plaintiff's customers to terminate their client relationship with Plaintiff.

*Id* ¶ 11. Plaintiff also employed Christy Press ("Press") and Tracy Yourke ("Yourke") (Yourke was employed as a District Manager). Their employment agreements contained provisions identical to those in Pepock's agreement. *See id.* ¶¶ 12–13.

Smart Surgical compiles and maintains confidential information related to the identity of its customers. This information "derive[s] independent economic value from not being generally known . . . by individuals unaffiliated with [Smart Surgical]." *Id.* ¶ 19. Smart Surgical alleges that while they were still employed by Smart Surgical, Pepock, Yourke, and Press improperly used this confidential customer information at the request of Defendants to solicit customers and divert sales for the benefit of UCB. Smart Surgical further alleges that Pepock and Yourke, at the request and with the assistance of UCB, formed Nova Vita to divert customers and sales from Smart Surgical to UCB and Nova Vita. Smart Surgical asserts that Nova Vita was formed so that Pepock, Yourke, and UCB could "channel [ ] their illicit sales" through Nova Vita and thereby mask their participation in the misconduct. *Id.* ¶ 22. It alleges that UCB and Nova Vita "misappropriated [Smart Surgical's] Trade Secrets by . . . wrongfully obtaining and retaining them" from the former Smart Surgical employees. *Id.* ¶ 61. Smart Surgical further alleges that Pepock and Yourke have continued to inappropriately use Smart Surgical's confidential customer information since the time of their termination. After they were terminated, Pepock and Yorke allegedly solicited Press to leave Smart Surgical and work for Nova Vita.

Smart Surgical also alleges that Pepock and Yourke owed Smart Surgical fiduciary duties by virtue of their respective positions as Vice President of Sales and District Manager. They allegedly breached these fiduciary duties by misusing the confidential customer information to divert sales and customers away from Smart Surgical. Smart Surgical alleges that UCB and Nova Vita encouraged and assisted them in these breaches.

Smart Surgical asserts five causes of action: (1) tortious interference with an economic relationship, (2) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"), (3) misappropriation of trade secrets under the Uniform Trade Secrets Act, UTAH CODE § 13-24-2 ("UTSA"), (4) aiding and abetting the breach of a fiduciary duty, and (5) unjust enrichment. UCB moves to dismiss all five causes of action for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). It alternatively moves the court to dismiss the three tort claims on the grounds that they are preempted by the UTSA. Nova Vita likewise moves for judgment on the pleadings as to the three tort claims, arguing that they are preempted by the UTSA.[1]

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient

---

[1] Smart Surgical argues that Nova Vita's Motion for Judgment on the Pleadings is premature because UCB has not yet filed an answer to the Complaint. It argues that the pleadings are therefore incomplete. But Nova Vita has filed its Answer (ECF No. 13), so the pleadings are complete as between Nova Vita and Smart Surgical. Nova Vita's Motion is therefore not premature.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The same standard applies to motions for judgment on the pleadings brought under Rule 12(c). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011).

## DISCUSSION

### I.     Tortious Interference

UCB argues that Smart Surgical's claim for tortious interference should be dismissed for two principal reasons: (1) Smart Surgical has failed to allege any "improper means" by which Defendants interfered with Smart Surgical's contracts with Pepock, Press, and Yourke; and (2) the claim is based on the misappropriation of trade secrets and is therefore preempted by the UTSA. Nova Vita joins only in the second of these arguments. Smart Surgical responds that UCB interfered with its economic relations through several improper means, including disregarding industry standards to respect non-compete clauses, assisting in the fraudulent formation of a business entity to mask illicit activity, and aiding and abetting breaches of fiduciary duties. Plaintiff further argues that the UTSA does not preempt its tortious interference claims because the claims are not based on misappropriation of trade secrets, but rather on the Defendants' other misconduct, as outlined in the preceding sentence.

#### A.     Improper Means

In order to state a claim for tortious interference with economic relations under Utah law, a plaintiff must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means, (3) causing

4

injury to the plaintiff." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) (citation and internal quotation marks omitted).[2] UCB does not address the first and third elements of this test. Rather, it contends that Smart Surgical has not met the second element inasmuch as it has not alleged that UCB interfered with the its economic relations through improper means.

The Utah Supreme Court has "narrowly" defined improper means "to include only those actions that 'are contrary to law, such as violations of statutes, regulations, or recognized common-law rules' or actions that violate 'an established standard of a trade or profession.'" *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 353 (Utah 2019) (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982) (*overruled on other grounds by Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015))). A non-exhaustive list of conduct that may constitute improper means includes "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood[s]." *C.R. England*, 437 P.3d at 353 (citation and internal quotation marks omitted).

UCB argues that even if it is true that UCB induced Pepock, Press, and Yourke to breach their employment contracts with Smart Surgical, inducing such a breach fulfills the first prong of the tortious interference test, not the second. *See First Am. Title Ins. Co.*, No 2:15 cv 229 DN, 2016 WL 6956603, at *1 (D. Utah Nov. 27, 2016). Allowing inducement of breach to satisfy both the interference *and* improper means prong would make the test circular and would render the second prong meaningless. Smart Surgical apparently does not contest this notion. Rather, it argues that

---

[2] The Utah Supreme Court has clarified that an improper purpose alone, without improper means, will not suffice to create liability for tortious interference. *See Eldridge v. Johndrow,* 345 P.3d 553, 565 (Utah 2015).

5

UCB committed other acts that constituted improper means. These other acts are: (1) violating industry standards of non-competition and confidentiality by encouraging and aiding Pepock, Press, and Yourke to breach their non-disclosure and non-compete agreements, (2) assisting in the "fraudulent formation of business entities, created solely as a channel for illicit sales and interference," and (3) aiding and abetting the former Employees' breach of fiduciary duties by conspiring with them to steal customers and breach their agreements with Smart Surgical. Smart Surgical contends that these independent bad acts, not the inducement of a breach of contract, satisfy the improper means requirement.

    The court is not persuaded by Smart Surgical's arguments. None of the instances of allegedly wrongful conduct rise to the level of "improper means" for purposes of a tortious interference claim. The industry standard that UCB allegedly violated is respecting non-compete and confidentiality agreements. But merely rephrasing a party's inducement to breach a contract as a violation of industry standards will not suffice to satisfy the improper means requirement.[3] Similarly, Smart Surgical cites no authority to support its contention that aiding and abetting a breach of a fiduciary duty constitutes improper means. Due to the similarity between inducing a breach of contract and inducing a breach of fiduciary duty, the court concludes that it likewise does not satisfy the improper means requirement. This is especially true when the conduct at the heart of the claim—misappropriating trade secrets and improperly soliciting customers—is the same conduct giving rise to the breach of contract claim. Similarly, the third instance of wrongful behavior alleged by Smart Surgical, that UCB helped to fraudulently create a business entity to

---

[3] Smart Surgical also fails to allege to which industry UCB, Nova Vita, and Smart Surgical belong, nor does it identify the applicable industry standard, other than the vague assertion that it includes non-competition and confidentiality.

mask Pepock and Yourke's misappropriation of trade secrets, does not constitute improper means. Smart Surgical cites no authority supporting a finding of improper means on similar facts. And even if the court were to find that fraudulently forming a business could constitute improper means, Smart Surgical alleges no facts to indicate that Nova Vita was "fraudulently formed." Even if Nova Vita were formed to facilitate a breach of contract by diverting sales from Smart Surgical, this does not mean that it was fraudulently formed. Because none of the behavior to which Smart Surgical points satisfies the improper means requirement, Smart Surgical has failed to state a claim for tortious interference. The court therefore grants UCB's motion to dismiss Smart Surgical's claim for tortious interference.

### B. Preemption

The court now turns to the preemption argument.[4] Defendants argue that the UTSA preempts Smart Surgical's tortious interference claim because the claim is based on the misappropriation of trade secrets, namely, Smart Surgical's customer lists. Smart Surgical responds that the misappropriation of trade secrets does not form the basis for its tortious interference claim. Rather, it argues that Nova Vita violated industry standards, assisted in the fraudulent formation of a business entity (which apparently is Nova Vita itself), and aided and abetted the former employees in their breach of fiduciary duties. The court is not persuaded by Smart Surgical's argument.

The UTSA "displaces conflicting tort, restitutionary, and other [Utah law] providing civil remedies for misappropriation of a trade secret . . . [but] does not affect ... civil remedies that are

---

[4] UCB raised the preemption argument as an alternative basis for dismissing the tortious interference claim. But Nova Vita raised it as the only basis for dismissal.

not based upon misappropriation of a trade secret . . . ." UTAH CODE § 13–24–8. The Utah Court of Appeals has interpreted the UTSA to preempt tort claims "to the extent that [they are] based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 331 (Utah Ct. App. 2012). Thus, "if the [non–UTSA] claim fails without the allegations regarding misuse of information, the UTSA preempts it." *Giles Const., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-cv-37, 2015 WL 3755863, at *6 (D. Utah June 16, 2015).

Here, the court agrees with Defendants that the UTSA preempts Smart Surgical's tortious interference claim because the factual allegations underlying it all arise from the alleged misappropriation of trade secrets. Smart Surgical argues that UCB and Nova Vita violated industry standards by encouraging the former employees to violate their non-compete clauses. But the employees violated their non-compete clauses by using Smart Surgical's confidential client lists to compete with Smart Surgical. In other words, the misappropriation of the lists is the basis for the violation of the non-compete clauses. Similarly, Nova Vita was allegedly formed to mask the former employees' illicit activity. But the illicit activity complained of is the former employees' use of the confidential lists to solicit Smart Surgical's clients. Finally, the alleged breach of fiduciary duty is also based on the use of the confidential client information, as explained more fully in Section IV below. Because allegations of misappropriation underlie each instance of wrongful behavior cited by Smart Surgical, the court concludes that Smart Surgical's tortious interference claim is preempted by the UTSA. Therefore, Smart Surgical's tortious interference claim against Nova Vita is also dismissed.

## II. Aiding and Abetting a Breach of Fiduciary Duty

Smart Surgical also alleges that Pepock and Yourke owed fiduciary duties to Smart Surgical and that UCB and Nova Vita knowingly assisted Pepock and Yourke in breaching these duties. UCB moves to dismiss these claims for two reasons: (1) that Smart Surgical failed to state a plausible claim for relief, and (2) that the claim is preempted by the UTSA. Nova Vita joins in the latter of these two arguments. Because the court concludes that the claim is preempted by the UTSA, it addresses only the issue of preemption.

As explained above, the UTSA "displaces conflicting tort, restitutionary, and other [Utah law] providing civil remedies for misappropriation of a trade secret . . . [but] does not affect ... civil remedies that are not based upon misappropriation of a trade secret . . . ." Utah Code § 13–24–8. Defendants argue that Smart Surgical's aiding and abetting a fiduciary duty claim is based solely on the misappropriation of trade secrets and is therefore preempted. They point to the Complaint, in which Smart Surgical alleges that "Defendants knowingly assisted Pepock and Yourke to breach their fiduciary duties to Plaintiff by encouraging them and assisting them in the theft and misappropriation of Plaintiff's intellectual property and other rights." ECF No. 2 ¶ 67.

Smart Surgical responds that the claim is not based solely on the misappropriation of trade secrets; rather, it is based on Pepock and Yourke's soliciting customers and diverting sales from Smart Surgical prior to the termination of their employment. According to the Complaint, Pepock and Yourke both owed fiduciary duties to Smart Surgical by virtue of their respective roles as Vice President of Sales and District Manager. *See* ECF No. 2 ¶ 25–28. Defendants do not dispute this fact. One who owes a fiduciary duty to a corporation may breach it by competing with the corporation against the interests of the company. *See Rawcliffe v. Anciaux*, 416 P.3d 362, 370–71 (Utah 2017) (explaining that a corporate director or officer breaches the duty of good faith [under

9

Utah Code 16-10a-840(1)] when she "take[s] some action that she [ ] knows is not in the best interests of the corporation . . . ."). Thus, in theory, it is possible that a breach of fiduciary duty could have occurred independent of the misappropriation of trade secrets.

But the Complaint contains no allegations that Pepock and Yourke solicited any customers whose information was not contained in Smart Surgical's confidential lists. In other words, the breach of fiduciary duty, and any damages that occurred as a result thereof, depends wholly on the use of the confidential customer information. Thus, the facts here are similar to those in *CDC Restoration*. In that case, the Utah Court of Appeals found that a breach of fiduciary duty claim was preempted by the UTSA where the defendant "use[d] CDC's Trade Secrets and confidential business information to compete unfairly with CDC." 274 P.3d at 331–32. Likewise here, accepting as true the allegations that Pepock and Yourke owed fiduciary duties to Smart Surgical and that they solicited customers and sales away from Smart Surgical, the court nevertheless concludes that the claim for aiding and abetting the breach of fiduciary duty is preempted by the UTSA. The claim could not survive absent the allegations of misappropriation of trade secrets, since Smart Surgical fails to allege that its former employees solicited any customers who were not included on Smart Surgical's confidential client lists. *See Giles*, 2015 WL 3755863, at *6 ("[I]f the [non–UTSA] claim fails without the allegations regarding misuse of information, the UTSA preempts it."). The court therefore grants the motion to dismiss the claim for aiding and abetting a breach of fiduciary duty.

### III. Unjust Enrichment

Smart Surgical brings claims for unjust enrichment against Defendants. Defendants move to dismiss on two grounds: (1) that Smart Surgical has failed to state a claim for relief, and (2) that

the claim is preempted by the UTSA. Because the court agrees that the claim is preempted by the UTSA, it addresses only the issue of preemption.

Smart Surgical alleges that "Plaintiff's client and customer lists are valuable, and Defendants' illicit taking of those lists and other information related to the monetization of these lists, without compensation, has benefitted Defendants through significant and ongoing sales income." ECF No. 2 ¶ 71. It further asserts that "Defendants took the client and customer lists illegally and have not compensated Plaintiff for taking that information and taking its customers." *Id.* ¶ 72. Like its claims for tortious interference and aiding and abetting the breach of a fiduciary duty, Smart Surgical's claim for unjust enrichment fails without the allegations regarding the misappropriation of trade secrets. *See Giles*, 2015 WL 3755863, at *6. This is because the benefit that Defendants unjustly received is Smart Surgical's "client and customer lists." Plaintiff argues that the benefit was in fact "significant ongoing sales and income," and not the client information. *See* ECF No. 26 at 17. But the ongoing sales and income were generated through the allegedly misappropriated information. And the court cannot ignore the plain language of the complaint, which states that the "valuable" benefit was the "client and customer lists." ECF No. 2 ¶ 71. Because the misappropriation of trade secrets lies at the base of Smart Surgical's unjust enrichment claim, the court concludes that the claim is preempted by the UTSA and must therefore be dismissed.

IV. **Violation of the Defend Trade Secrets Act**

Smart Surgical alleges that UCB misappropriated its trade secrets in violation of the DTSA. The DTSA "creates a cause of action for the 'owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'" *Cave Consulting Grp. v. Truven Health Analytics Inc.*, 2017 WL 1436044, *3 (N.D.

11

Cal. Apr. 24, 2017) (quoting 18 U.S.C. § 1836(b)(1)). "A 'trade secret' includes 'all forms and types' of information that derives value from being secret and that the owner took reasonable measures to keep secret." *Id*. (quoting 18 U.S.C. § 1839(3)(A), (B)). "'Misappropriation' consists of (a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express or implied consent.'" *Id*. (quoting 18 U.S.C. § 1839(5)(A), (B)). Consequently, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use" of a trade secret. *Id*. (citing 18 U.S.C. § 1839(5)).

UCB moves to dismiss Smart Surgical's claim for violation of the DTSA, arguing that Smart Surgical failed to allege "that UCB ever acquired or used" Smart Surgical's trade secrets. ECF No. 25 at 11. Rather, UCB argues, Smart Surgical alleges only that "UCB . . . hired [Nova Vita] to sell UCB's product." *Id.* Smart Surgical responds that it clearly alleged UCB's acquisition of the trade secrets. It points to Paragraph 61 of the Complaint, in which it alleges that "Defendants misappropriated Plaintiff's Trade Secrets by, among other things, wrongfully obtaining and retaining them through the aiding and abetting of breaches of non-disclosure agreements . . . ." Smart Surgical further contends that even if UCB did not obtain actual physical possession of the trade secrets, misappropriation may be inferred at the pleadings stage when a company has the motive and opportunity to steal trade secrets and recruits employees that actually acquire them. *See* ECF No. 26 at 12 (citing *Bombardier, Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1181 (W.D. Wash. 2019).

The court agrees with Smart Surgical. The plain language of the Complaint does allege that UCB obtained and benefited from the client lists by aiding and encouraging the former Smart Surgical employees to disclose them. *See* ECF No. 2 ¶ 61. Even if Smart Surgical does not allege

12

that UCB came into physical possession of the client lists, courts infer appropriation at the motion-to-dismiss stage where a plaintiff alleges that individuals misappropriated information for the benefit of the defendant entity. In *Bombardier*, defendant Mitsubishi Aircraft Corporation America ("MACA") moved to dismiss the DTSA claims against it, arguing that plaintiffs failed to allege that it had acquired the trade secrets in question. 383 F. Supp. 3d at 1179. The employees who allegedly stole the trade secrets in that case all worked either for Mitsubishi Aircraft Corporation ("MAC"), the parent of MACA, or AeroTEC Engineering, a firm enlisted by MAC to aid in the development of a certain jet. The plaintiff's complaint in that case implied that the plaintiff's former employees stole the trade secrets and relayed them to MAC or AeroTEC, which in turn relayed them to MACA. MACA argued that this "chain of inferences [was] too speculative to state a claim that [MACA] acquired or used the trade secrets." *Id.* at 1179. But the court held that "the inferential chain . . . [was] not too speculative" because MAC had formed MACA specifically to work on the jet in question, and all three entities, MAC, MACA, and AeroTEC, "worked closely together" on the jet. *Id.* On these alleged facts, the court concluded that it was "plausible that, if any of the alleged trade secrets were acquired or used by [MAC] or AeroTEC, these companies would have relayed the trade secrets to [MACA]." *Id.*

Similarly here, Smart Surgical alleges that UCB actively worked with Nova Vita and Smart Surgical's former employees to solicit customers, whose information had allegedly been stolen, for the benefit of UCB. *See* ECF No. 2 ¶ 35. UCB argues that unlike the defendant in *Bombardier*, it lacked the motive to acquire the customer lists because it "manufactures different products than Plaintiff and was successful long before Plaintiff existed." ECF No. 32 at 6. But the Complaint alleges that UCB "manufactures, distributes, and sells products which directly compete with those manufactured, distributed, and sold by Plaintiff." At this stage, the court must accept this allegation

13

as true. Further, the fact that a company is already "successful" does not suggest that it would have no motive to acquire new customers. The court therefore concludes that Smart Surgical has stated a plausible claim for relief under the DTSA.

V.  **Violation of the Utah Trade Secrets Act**

Smart Surgical also sues UCB for misappropriation of trade secrets under the UTSA. The UTSA provides: "To establish a claim for misappropriation of trade secrets, [a plaintiff] must show (1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [the defendant's] use of the secret that injures [the plaintiff]." *Water & Engergy Sys. Tech., Inc. v. Keil*, 974 P.2d 821, 822–23 (Utah 1999) (citation omitted). UCB argues that Smart Surgical's UTSA claims should be dismissed for reasons nearly identical to those detailed above—it argues that Smart Surgical failed to allege that UCB acquired or used the trade secrets in question. For the same reasons enumerated in the previous section, the court rejects this argument and concludes that Smart Surgical has stated a plausible claim for relief under the UTSA.

## CONCLUSION AND ORDER

The court HEREBY ORDERS as follows:

1. Defendants' motions to dismiss Smart Surgical's tortious interference claims are GRANTED. The tortious interference claims are DISMISSED.

2. Defendants' motions to dismiss Smart Surgical's claims for aiding and abetting a breach of fiduciary duty are GRANTED. The claims are DISMISSED.

3. Defendants' motions to dismiss Smart Surgical's unjust enrichment claims are GRANTED. The claims are DISMISSED.

4. UCB's motion to dismiss Smart Surgical's DTSA claim is DENIED.

    5.  UCB's motion to dismiss Smart Surgical's UTSA claim is DENIED.

Accordingly, only Smart Surgical's Second and Third Causes of Action, its claims under the DTSA and the UTSA, remain pending in this matter.

    DATED February 25, 2021.

                      BY THE COURT

                        _____
                        Jill N. Parrish
                        United States District Court Judge